**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| THE STONE COLLECTION, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-cv-00412 |
| | § | |
| IMPORT MERCHANDISING CONCEPTS GP, LLC, | § | **Jury Trial Demanded** |
| | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff The Stone Collection, LLC, which does business in Texas as IMC by The Stone Collection ("IMC"), respectfully files this Complaint against Defendant Import Merchandising Concepts GP, LLC ("Import Merchandising Concepts") for acts of: (i) federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark infringement in violation of Texas common law; and (iv) dilution in violation of Tex. Bus. & Com. Code § 16.103.

## INTRODUCTION

1.     For some 26 years, natural stone and manmade hard surface materials have been marketed and sold for residential and commercial use under the distinctive and federally registered IMC® mark. Throughout that period, IMC and its predecessors-in-interest have operated under the IMC® name and mark at physical locations in Dallas and Fort Worth, and also on the Internet.

2.     IMC, including its predecessors-in-interest, has invested substantial time and resources developing, advertising, and marketing its IMC® natural stone and manmade hard

1

surface materials and services.  And sales under the IMC mark have been significant, totaling more than 100 million dollars since 2009. As a result, IMC has become one of the largest suppliers of natural stone slabs and tile in the Dallas-Fort Worth area, and it provides all of those goods and related services under its IMC name and mark.

3.      Long after IMC became known under its IMC® name and mark in the field of stone products and related services in the Dallas-Fort Worth area, Import Merchandising Concepts has begun offering similar stone products and services, and it is doing so not only under an identical "IMC" name and mark, but also under the name and mark IMPORT MERCHANDISING CONCEPTS, an 8-syllable phrase that it abbreviates, and that others will inevitably abbreviate, to IMC.

4.      By using an identical IMC mark and a mark that will be abbreviated to the identical IMC mark for competing and related goods and services in the same geographic area, Import Merchandising Concepts is attempting to increase its sales by deceiving consumers and reaping undeserved recognition from being associated with IMC's successful brand.

5.      IMC is being irreparably harmed by Import Merchandising Concepts' deception and infringement. Consumers are being confused and deceived, IMC's trademark is being diluted, and IMC has lost control over its own valuable reputation and goodwill.

6.      IMC attempted to resolve this matter without litigation, putting Import Merchandising Concepts on notice of IMC's prior trademark rights and requesting that Import Merchandising Concepts stop using its infringing mark.  But Import Merchandising Concepts, despite giving some indications that it would stop using its infringing mark and switch to one that is non-infringing, is continuing to promote and sell stone products and services using the infringing IMC and IMPORT MERCHANDISING CONCEPTS marks.

7.      Unless Import Merchandising Concepts is enjoined from further infringement and dilution, and is required to compensate IMC for its damages, IMC and its prior trademark will be damaged irreparably.

## THE PARTIES

8.      IMC is a Delaware limited liability company with its principal place of business at One Momentum Blvd., Suite 1000, College Station, Texas 77845 and with wholesale locations at 11210 Zodiac Lane, Dallas, TX 75229 and 2100 Handley-Ederville Rd., Fort Worth, Texas 76118.

9.      Upon information and belief, Import Merchandising Concepts is a Texas limited liability company with its principal place of business at 15565 Wright Brothers Drive, Addison, Texas 75001-4274.  Import Merchandising Concepts' registered agent is Doug Smith at 13445 Noel Road, Suite 2100, Dallas, Texas 75240.

10.     IMC and Import Merchandising Concepts compete in the promotion and sale of natural and manmade stone materials, including the IMC goods and services at issue, in this Division, in the State of Texas.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over Counts I and II of this Complaint pursuant to 15 U.S.C. § 1121, in that they arise under the Lanham Act (15 U.S.C. § 1114, 15 and U.S.C. § 1125(a)); pursuant to 28 U.S.C. § 1338(a), in that they arise under an Act of Congress relating to trademarks; and pursuant to 28 U.S.C. § 1331, in that they arise under the laws of the United States.  Count I states a claim for federal trademark infringement in violation of Section 32(1) of the Lanham Act. 15 U.S.C. § 1114(1). Count II states a claim for federal unfair competition in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

12.     This Court has supplemental jurisdiction over Counts III and IV of this Complaint pursuant to 28 U.S.C. § 1338(b) and the principles of supplemental jurisdiction as expressed in 28 U.S.C. § 1367. Count III states a claim for trademark infringement in violation of Texas common law. Count IV states a claim for trademark dilution in violation of Texas Business & Commerce Code § 16.103.

13.     Venue is appropriate in this District and Division pursuant to 28 U.S.C. § 1391(b). Import Merchandising Concepts is subject to personal jurisdiction here, and the misconduct giving rise to IMC's claims is occurring here, because, on information and belief, Defendant is promoting, offering and selling infringing products in this District.

## FACTS COMMON TO ALL COUNTS

### (IMC and Its Proprietary Trademark)

14.     IMC, including its predecessors-in-interest, has been selling stone and other hard surface materials for commercial and residential use, and related goods and services, under its distinctive IMC® trademark for at least 26 years.

15.     Since commencing sales under its IMC® mark, IMC has invested significant resources in advertising, marketing, and promotion. IMC itself, and through the distributors and retailers of its products, has advertised in a variety of media, including, but not limited to, print, direct mail, electronic mail, radio, trade shows, point-of-purchase, the Internet, and social media.

16.     Sales under IMC's IMC® name and mark have been extensive, with more than 100 million dollars in total sales since 2009.

17.     IMC is one of the largest suppliers of stone materials in the Dallas-Fort Worth area, providing its products and services to customers, including fabricators, contractors, and builders in the commercial and residential real estate segments.  All of IMC's sales in Texas and the surrounding states of Oklahoma, Arkansas, and Louisiana are made under its IMC® mark.

18.     IMC conducts business from two physical locations in the Dallas-Fort Worth area and also enjoys a strong Internet presence.

19.     Through more than two and a half decades of successful promotion and sales, the IMC® trademark, in addition to being inherently distinctive, has acquired strong secondary meaning and distinctiveness.

20.     As a result of IMC's longstanding promotion and success under its IMC® mark, the IMC® mark is widely recognized by the public throughout Texas or throughout at least the Dallas-Fort Worth area of Texas, and is famous, at least in those areas.

21.     Given the importance of the IMC® brand, IMC and its predecessors-in-interest invested the time and resources to obtain federal registrations of the IMC® mark in connection with the sale of stone and other hard surface materials, as follows:

| REG. NO. | MARK | GOODS/SERVICES |
|----------|------|----------------|
| 1,638,411 | IMC | natural stone materials for building namely marble and granite for commercial and residential use; custom design and consulting services related thereto in the field of dimensional stone materials used in commercial and residential applications |

See Exhibit A (PTO printout for first IMC® trademark registration).  This mark was registered in 1990, and the registration lasted for 25 years until it was inadvertently allowed to lapse in June 2015 during a corporate acquisition.  Upon discovering this oversight, IMC promptly took action to obtain another registration of its IMC® mark, as follows:

| REG. NO. | MARK | GOODS/SERVICES |
|----------|------|----------------|
| 4,850,369 | IMC | Retail and wholesale store and online retail and wholesale store services featuring hard surface natural stone and hard surface manmade materials for |

| | | commercial and residential use. |
|---|---|---|

*See* <u>Exhibit B</u> (PTO printout for current IMC® trademark registration).  And IMC has made continuous and uninterrupted use of its IMC mark in commerce since at least as early as 1990. IMC's federal registrations of its IMC® trademark put Import Merchandising Concepts on constructive notice of IMC's exclusive nationwide rights in IMC® with the goods and services identified in those registrations.

22.     The IMC® trademark -- and the goodwill that it represents -- is among the most valuable assets that IMC owns.

**(Import Merchandising Concepts and its Trademark Infringement and Dilution)**

23.     Many sellers of stone materials and related goods and services compete with IMC without infringing its IMC® trademark.

24.     Import Merchandising Concepts' use of its IMC and IMPORT MERCHANDISING CONCEPTS marks in connection with stone products and services began long after IMC's first use of its IMC® mark.

25.     Import Merchandising Concepts has used, and is using, the IMC and IMPORT MERCHANDISING CONCEPTS marks on and in connection with advertising and promotional materials, on websites, in its phone system, on labeling for its products, in connection with quotations for its products, and in other ways.

26.     Import Merchandising Concepts knows of IMC's prior IMC® mark and knows that using its IMC and IMPORT MERCHANDISING CONCEPTS marks in connection with stone products and services creates a likelihood of confusion. In fact, Import Merchandising Concepts has attempted to leverage the potential confusion in order to increase its own sales.

**(IMC's Efforts To Stop Import Merchandising Concepts' Infringement)**

27.     After IMC learned of Import Merchandising Concepts' infringement and dilution of the IMC® mark, counsel for IMC, on June 15, 2015, sent Import Merchandising Concepts a letter stating that Import Merchandising Concepts was infringing and demanding that Import Merchandising Concepts stop using the IMC® mark.

28.     On or about July 9, 2015, counsel for IMC followed up on the demand letter by making a phone call to Import Merchandising Concepts.   During the phone call, Import Merchandising Concepts indicated that it may be willing to stop using the IMC mark in connection with its stone business, but that it would need some time to complete the phase-out.

29.     On July 20, 2015, counsel for Import Merchandising Concepts sent an email to counsel for IMC stating, among other things, that "I can understand how my client using the initials of the company name 'IMC' can be confused with the 'IMC' from your client . . ." and "[r]egarding the three letters 'IMC' I can see where with all facts verified, that it would make sense for my client to cease using those three letters in their materials."

30.     After further correspondence between counsel, Import Merchandising Concepts indicated that it would change the name for its stone business and stop using the IMC mark, but that it needed a phase-out period.

31.     On September 1, 2015, Counsel for Import Merchandising Concepts emailed counsel for IMC, stating, "[m]y client has also begun eliminating the 'IMC' abbreviation from all their correspondence, marketing materials, etc  - and all things remaining as today, doesn't plan to reintroduce in the future.  The clean up should be done shortly."

32.     IMC responded to this email on September 16, 2015, providing a phase-out period for Import Merchandising Concepts until November 4, 2015.   In response to that

correspondence, the manager of Import Merchandising Concepts' stone products division, Brad Smith, contacted an IMC representative on September 17, 2015, and indicated that Defendant would need until "mid-December or January 1st" to complete the phase-out of the IMC mark.

33.     As 2015 drew to a close, IMC noted that Import Merchandising Concepts did not appear to be near completing its phase-out of the IMC mark.  For example, Import Merchandising Concepts' website did not appear to have changed since June 2015, and it continued to display the IMC mark prominently at multiple locations.  Import Merchandising Concepts' phone system still identified it as IMC as well.

34.     On December 29, 2015, counsel for IMC sent a follow-up letter to counsel for Import Merchandising Concepts noting that, despite its assurances to the contrary, Import Merchandising Concepts did not appear to be discontinuing use of the IMC mark.

35.     After further investigation, IMC discovered that Import Merchandising Concepts was apparently taking some steps to change the name of its stone business from IMC to EVEREST STONE.   For example, there was an Everest Stone Facebook page (www.facebook.com/granitedistributor/info?tab=overview), and also an Everest Stone web site (www.www.granitedistributor.com).

36.     As of January 4, 2016, however, Import Merchandising Concepts' primary website was still active and was still featuring the IMC mark.  On January 5, 2016, IMC's counsel spoke with Import Merchandising Concepts' counsel about Import Merchandising Concepts' failure to meet its own requested extended deadline for phasing out the IMC mark. Import Merchandising Concepts' counsel indicated that he would speak with his client and then contact IMC's counsel, but failed to follow through on this.  Over the next two weeks, counsel

for IMC made several more attempts to contact Import Merchandising Concepts' counsel, but Import Merchandising Concepts' counsel never responded.

37.     As of January 19, 2016, Import Merchandising Concepts' website was still unchanged, and it had given no indication as to whether or when it would stop using the IMC mark.  So IMC sent a final letter to Import Merchandising Concepts' counsel demanding that use of the IMC mark stop by January 29, 2016.   Import Merchandising Concepts' counsel did respond to this letter, but he gave no indication as to when use of the IMC mark would stop, stating only that "[p]rogress has been made and per the client will continue to be made. No timelines or commitments per Client, but progress."

38.     As of February 2, 2016, Import Merchandising Concepts' website remains unchanged, and it continues to display the IMC and IMPORT MERCHANDISING CONCEPTS marks prominently in connection with the stone business, including in all of the following ways:





39.     In addition, although Import Merchandising Concepts appears to have started an Everest Stone website in connection with its stone business, the contact number provided at that website places callers into an IMPORT MERCHANDISING CONCEPTS automated phone system, where callers are told "thank you for calling IMC."   And as of early January, the outgoing voice mail message of  Brad Smith, manager of Import Merchandising Concepts' stone division, stated that "you have reached Brad with IMC."  Finally, both the Everest Stone website and the Everest Stone Facebook page feature a photograph showing that Import Merchandising Concepts still presents itself and its stone business to consumers as IMC.



40.     Thus, despite IMC's notices and Import Merchandising Concepts' assurances, Import Merchandising Concepts is continuing to trade on the goodwill that IMC has built up in its IMC® brand through decades of use, advertising, and sales.

**(Confusion, Infringement, and Dilution)**

41.     Import Merchandising Concepts' IMC and IMPORT MERCHANDISING CONCEPTS trademarks infringe and dilute IMC's prior registered IMC® trademark. The marks are identical and the goods and services at issue (stone materials and related goods and services) are also identical, are related, and compete directly in the same geographic area.

42.     Given that Import Merchandising Concepts had constructive, and likely actual, knowledge of IMC's prior mark used with the sale of stone materials before choosing the same mark for the same goods and services in the same geographic location, it is clear that Import Merchandising Concepts intended to confuse the public and to benefit from the reputation of IMC's successful brand.

11

43.     Given that Defendant continues to use its IMC and IMPORT MERCHANDISING CONCEPTS marks long after being put on notice of its infringement, and after committing to stop all use by January 1, 2016, it is clear that Import Merchandising Concepts is trying to continue capitalizing on the confusion and deception that it has intentionally created.

44.     In the brief time since IMC learned of Import Merchandising Concepts' infringement of the IMC® mark, IMC has already learned of multiple instances of actual confusion that Import Merchandising Concepts' infringement has created.  For example, a fabricator, Spin Design, tried to send one of its customers to the genuine IMC to pick out stone material for a project, but the customer mistakenly went to Import Merchandising Concepts instead.  IMC learned of this confusion only when Spin Design contacted IMC to pick up the material that the customer had mistakenly selected at Import Merchandising Concepts.  The following image is of an Import Merchandising Concepts material selection form that Import Merchandising Concepts filled out based on the material that the deceived consumer had intended to select from IMC:

In another example of actual confusion, IMC recently received a misdirected payment from a confused customer who intended to send payment to Import Merchandising Concepts, as shown below:



As another example, RTKL, one of the largest architects in the Dallas-Fort Worth area, demonstrated that it was confused by Import Merchandising Concepts' trademark infringement. Laura Sanchez of RKTL requested quotes from Import Merchandising Concepts believing that it was the genuine IMC. Sanchez then emailed IMC (@imcstone.com) to verify pricing for the materials specified by Import Merchandising Concepts:

**From:** Laura Sanchez <laura@stone-tec.net>
**Date:** January 4, 2016 at 2:10:41 PM CST
**To:** Kelly Burrows <kburrows@imcstone.com>
**Subject: FW: PROJECT : 3300 MAIN ST , HOUSTON TEXAS   ARCHITECTS : RTKL AN ARCADIS COMPANY**

Kelly , good afternoon

Could you help me  with price ?

**From:** Laura Sanchez
**Sent:** Tuesday, December 08, 2015 1:38 PM
**To:** 'mrichmond@imcimports.com' <mrichmond@imcimports.com>
**Subject:** FW: PROJECT : 3300 MAIN ST , HOUSTON TEXAS ARCHITECTS : RTKL AN ARCADIS COMPANY

Good morning

Could you help me with price

PROJECT : 3300 MAIN ST , HOUSTON TEXAS
ARCHITECTS : RTKL AN ARCADIS COMPANY

| MANUFACTURER | MARK | IDENTIFICATION | COLOR | REMARKS AND SIZE |
|---|---|---|---|---|
| IMPORT MERCHANDISING CONCEPTS | ST-102 | ALPINE WHITE POLISHED | | 2 CM |
| IMPORT MERCHANDISING CONCEPTS | ST-103 | CREAM GRACE POLISHED | | 3 CM |
| IMPORT MERCHANDISING CONCEPTS | ST-104 | OYSTER WHITE POLISHED | | 3 CM |
| IMPORT MERCHANDISING CONCEPTS | ST-106 | EVEREST WHITE ST-7U POLISHED | | 3 CM |
| IMPORT MERCHANDISING CONCEPTS | ST-108 | DELICATUS WHITE POLISHED | | 3 CM |
| IMPORT MERCHANDISING CONCEPTS | ST-109 | BIANCO ANTICO POLISHED | | 3 CM |

45.     Import Merchandising Concepts' infringement and dilution of IMC's IMC® mark is deceiving and confusing consumers, threatening IMC with irreparable harm, blurring the identification of IMC's mark with its goods and services, and tarnishing the affirmative associations that IMC's mark has come to convey.

46.     IMC has made every effort to resolve Import Merchandising Concepts' infringement and dilution amicably. IMC gave Import Merchandising Concepts written notice of its prior rights and requested that Import Merchandising Concepts cease its conduct.  And Import Merchandising concepts assured IMC that it would cease its infringement, but this turned out to be nothing more than an attempt to prolong its blatant and willful infringement and dilution.

47.     Unless this Court enjoins Import Merchandising Concepts, its intentional infringement and dilution will continue, deceiving consumers and harming IMC and its trademark rights.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

48.     IMC repeats the allegations in paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.     Import Merchandising Concepts, without the consent of IMC, has used and is using in commerce reproductions, counterfeits, copies, or colorable imitations of IMC's federally registered IMC® mark, in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

50.     Import Merchandising Concepts, without the consent of IMC, has reproduced, counterfeited, copied, or colorably imitated, and is continuing to reproduce, counterfeit, copy, or colorably imitate, IMC's federally registered IMC® mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act. 15 U.S.C. § 1114(1)(b).

51.     Import Merchandising Concepts' acts of trademark infringement are knowing, intentional, and willful.

52.     As a result of Import Merchandising Concepts' acts of trademark infringement, IMC is suffering irreparable harm.

53.     Unless and until Import Merchandising Concepts is enjoined by this Court, it will continue to commit acts of trademark infringement and will continue to confuse the public and cause irreparable harm to IMC.

54.     IMC is entitled to recover from Import Merchandising Concepts its profits, all damages that IMC has sustained from Import Merchandising Concepts' infringement, and the costs of the action pursuant to Section 35 of the Lanham Act. 15 U.S.C. § 1117.

55.     Because Import Merchandising Concepts' conduct is willful, IMC is also entitled to recover from Import Merchandising Concepts treble damages and reasonable attorney's fees pursuant to Section 35 of the Lanham Act. 15 U.S.C. § 1117.

**COUNT II**
**FEDERAL UNFAIR COMPETITION**

56.     IMC repeats the allegations in paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     IMC's IMC® trademark is distinctive, has acquired secondary meaning, and is a protectable mark.

58.     Import Merchandising Concepts, on and in connection with goods and services, has used in commerce words, terms, names, symbols, and combinations thereof, and false designations or origin, false and misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of itself with another person, as to the origin, sponsorship, and approval of its goods, services, and commercial activities by another person, in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

59.     Import Merchandising Concepts, on and in connection with goods and services, has used in commerce words, terms, names, symbols, and combinations thereof, and false designations or origin, false and misleading descriptions of fact, and false and misleading representations of fact, which, in commercial advertising and promotion, misrepresent the nature, characteristics, qualities, and geographic origin of its or another person's goods, services, and commercial activities, in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B).

60.     By making unauthorized use of IMC's trademark, by making false and misleading representations, and by committing other acts of unfair competition, Import Merchandising Concepts is engaging in false designation, unfair competition, and false advertising in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

61.     Import Merchandising Concepts' unauthorized use of IMC's trademark is knowing, intentional, and willful.

62.     As a result of Import Merchandising Concepts' acts of unfair competition, IMC is suffering irreparable harm.

63.     Unless and until Import Merchandising Concepts is enjoined by this Court, it will continue to commit acts of unfair competition, and will continue to deceive the public and cause irreparable harm to IMC.

64.     IMC is entitled to recover from Import Merchandising Concepts its profits, all damages that IMC has sustained from Import Merchandising Concepts' unfair competition, and the costs of the action pursuant to Section 35 of the Lanham Act. 15 U.S.C. § 1117.

65.     Because Import Merchandising Concepts' conduct is willful, IMC is also entitled to recover from Import Merchandising Concepts treble damages and reasonable attorney's fees pursuant to Section 35 of the Lanham Act. 15 U.S.C. § 1117.

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**

66.     IMC repeats the allegations in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.     IMC's IMC® trademark is eligible for protection; IMC is the senior user of the trademark for sale of natural stone and other products and services; and there is a likelihood of confusion between IMC's trademark as used in connection with the sale of natural stone and other products and services, and Import Merchandising Concepts' trademarks as used in connection with the sale of natural stone and other products.

68.     By making unauthorized use of marks confusingly similar to IMC's trademark, Import Merchandising Concepts is committing trademark infringement in violation of Texas common law.

69.     Import Merchandising Concepts' unauthorized use of marks confusingly similar to IMC's trademark is knowing, intentional, and willful.

70.     As a result of Import Merchandising Concepts' acts of trademark infringement, IMC is suffering irreparable harm, for which it has no adequate legal remedy.

71.     Unless and until Import Merchandising Concepts is enjoined by this Court, it will continue to commit acts of trademark infringement, and will continue to confuse the public and cause irreparable harm to IMC.

72.     IMC is entitled to recover from Import Merchandising Concepts its profits, all damages that IMC has sustained from Import Merchandising Concepts' infringement and unfair competition, and the costs of the action.

## COUNT IV
## TEXAS TRADEMARK DILUTION

73.     IMC repeats the allegations in paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74.     IMC owns the IMC® trademark, and the trademark is valid, is distinctive, and is capable of being diluted.

75.     Import Merchandising Concepts, without authorization, is using IMC's trademark to promote and sell its own goods and services, which are not genuine IMC goods or services.

76.     Import Merchandising Concepts' conduct creates a likelihood of dilution, by blurring the product identification of IMC's trademark, and by tarnishing the affirmative associations that IMC's trademark has come to convey, in violation of Texas Business & Commerce Code § 16.103.

77.     Import Merchandising Concepts' dilution is knowing, intentional, and willful.

78.     As a result of Import Merchandising Concepts' dilution, IMC is suffering irreparable harm, for which it has no adequate legal remedy.

79.     IMC is entitled to injunctive relief, and to other appropriate remedies and relief.

## PRAYER FOR RELIEF

WHEREFORE, IMC prays that the Court enter an Order:

A.      Adjudging that Import Merchandising Concepts is committing federal trademark infringement, federal unfair competition, common law trademark infringement, and dilution under Texas Business & Commerce Code § 16.103;

B.     Preliminarily and permanently enjoining Import Merchandising Concepts and its officers, agents, servants, employees, attorneys, and assigns, and all persons in active concert or participation with any of them, as follows:

1.   Prohibiting them from selling, shipping, distributing, promoting, or displaying any stone, tile, or similar materials or services using the IMC trademark or the IMPORT MERCHANDISING CONCEPTS trademark; or using any confusingly similar names, marks, or slogans;

2.   Prohibiting them from otherwise competing unfairly with IMC by trading off of IMC's goodwill and business reputation, or by infringing, misappropriating, or diluting IMC's trademark;

3.   Prohibiting them from stating or suggesting, in any advertising materials, promotional materials, or other materials, that they or their products are associated with, related to, approved by, or sponsored by IMC;

4.   Requiring them to promptly recall and destroy all packages, containers, advertisements, marketing materials, and other materials that include or display the infringing IMC or IMPORT MERCHANDISING CONCEPTS trademarks, or any colorably similar names, marks, or slogans, in connection with any stone, tile, or similar materials or services;

C.     Requiring Import Merchandising Concepts to file with this Court and to serve on IMC, within ten (10) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Import Merchandising Concepts has complied with the injunction;

D.     Awarding IMC its actual compensatory damages, including but not limited to Import Merchandising Concepts' profits and IMC's damages, in an amount to be determined at trial, for Import Merchandising Concepts' violations of federal and Texas law;

E.     Awarding IMC treble damages and other enhanced damages for Import Merchandising Concepts' knowing, intentional, and willful violations of federal and Texas law;

F.     Awarding IMC its costs and reasonable attorney's fees from Import Merchandising Concepts pursuant to federal and Texas law; and

G.   Awarding IMC such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, IMC respectfully demands a

trial by jury on all issues that are properly triable by a jury in this action.

Dated: February 12, 2016

                                          Respectfully submitted,


                              By    /s/ John C. Eichman
                                  John C. Eichman
                                  Texas Bar No. 06494800
                                  jeichman@hunton.com
                                  Eric R. Hail
                                  Texas Bar No. 24047579
                                  ehail@hunton.com

                                  **HUNTON & WILLIAMS LLP**
                                  1445 Ross Avenue, Suite 3700
                                  Dallas, Texas 75202
                                  Telephone:   214-468-3321
                                  Facsimile:   214-740-7118

OF COUNSEL:

Stephen P. Demm
Virginia Bar No. 30534
sdemm@hunton.com
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:   804-788-8200
Facsimile:   804-788-8218

# Exhibit A

Int. Cls.: 19 and 42

Prior U.S. Cls.: 12, 100 and 101

**United States Patent and Trademark Office**

Reg. No. 1,638,411

Registered Mar. 19, 1991

## TRADEMARK
### PRINCIPAL REGISTER

## IMC

IMC, INC. (TEXAS CORPORATION)
11210 ZODIAC LANE
DALLAS, TX 75229

FOR: NATURAL STONE MATERIALS FOR BUILDING NAMELY MARBLE AND GRANITE FOR COMMERCIAL AND RESIDENTIAL USE, IN CLASS 19 (U.S. CL. 12).

FIRST USE 2–19–1985; IN COMMERCE 2–19–1985.

FOR: CUSTOM DESIGN AND CONSULTING SERVICES RELATED THERETO IN THE FIELD OF DIMENSIONAL STONE MATERIALS USED IN COMMERCIAL AND RESIDENTIAL APPLICATIONS, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 2–19–1985; IN COMMERCE 2–19–1985.

SER. NO. 74–031,583, FILED 2–22–1990.

MITCHELL LERNER, EXAMINING ATTORNEY

# Exhibit B

# United States of America

## United States Patent and Trademark Office

# IMC

**Reg. No. 4,850,369**

**Registered Nov. 10, 2015**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

THE STONE COLLECTION, LLC (DELAWARE LIMITED LIABILITY COMPANY)
ONE MOMENTUM BOULEVARD, SUITE 1000
COLLEGE STATION, TX 77845

FOR: RETAIL AND WHOLESALE STORE AND ONLINE RETAIL AND WHOLESALE STORE SERVICES FEATURING HARD SURFACE NATURAL STONE AND HARD SURFACE MANMADE MATERIALS FOR COMMERCIAL AND RESIDENTIAL USE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 2-22-1990; IN COMMERCE 2-22-1990.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-575,435, FILED 3-25-2015.

JORDAN BAKER, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office